KNAPP et al. v. CRANE.

(Supreme Court, Appellate Division, First Department. February 5, 1897.)

1. VENDOR AND PURCHASER—TITLE OF VENDOR—DEED VOID AS TO CREDITORS.

A decree avoiding a deed as to judgment creditors of the grantor leaves the deed operative between the parties, and therefore when the rights under the decree are barred by limitation the deed is binding on all persons.

2. SAME—UNSATISFIED MORTGAGE—STATUTE OF LIMITATIONS.

A title is not defective because of a mortgage, where the statutory period has elapsed since it fell due, and there is evidence that no payment of principal or interest has been made within that time.

3. RES JUDICATA—INCONSISTENT REASONS FOR DECISION.

An adjudication in a condemnation proceeding as to which of two claimants is entitled to an award is not a decision on the question who held the title to the property condemned, where the decision is based on two inconsistent grounds.

4. STATUTE OF LIMITATIONS—PAYMENT.

The payment by a city, of an award in a condemnation proceeding, to the assignee of a mortgage on the property condemned, after a contest for the award between the assignee and the mortgagor, is not such a payment on the mortgage as will prevent the running of the statute of limitations.

Appeal from judgment on report of referee.

Action by Harry K. Knapp (individually and as executor of Gideon Lee Knapp, deceased) and others against Charlton W. Crane, for specific performance. There was a judgment for plaintiffs, and defendant appeals. Affirmed.

The contract was made February 7, 1895, by Sheppard Knapp, as agent for Gideon Lee Knapp. The latter thereafter died, and the present plaintiffs, who succeeded to his title, were substituted as plaintiffs. The premises in question are situated on the northerly side of 160th street, between 10th and 11th avenues, in the city of New York. They are 25 feet in front and rear, by 99 feet 11 inches in depth. No question is raised as to the title of the plaintiffs' to any portion of the premises, except a strip, 11 feet in width, extending transversely across the rear of the property, constituting the southerly half of what was formerly known as "Knapp's Lane." This strip was originally owned by Dennis Harris, who on December 1, 1855, conveyed it, together with other property, to John Dalley. Dalley conveyed it to Hollins in 1889, for a valuable consideration. It is not disputed that Hollins' interest is vested in the plaintiffs, and the sole question is whether he acquired good title to this strip by his deed from Dalley. On October 21, 1856, Blanco, a judgment creditor of Harris, obtained a judgment against him and Dalley, decreeing these deeds to be void as against the plaintiff and the other creditors of Harris. In April, 1875, proceedings were taken to widen Eleventh avenue. Among other awards was one made to "unknown owners" for a strip included in the southerly half of Knapp's Lane, and lying about 250 feet west of the land now in question. One Buckley applied for this award, as the assignee of Sarah Harris, wife of Dennis Harris. Dalley claimed in opposition. A referee was appointed to pass upon this and other claims. He decided in favor of Buckley. His report was confirmed at special term, and the order entered thereon was affirmed at general term and by the court of appeals. Further facts are stated in the opinion.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

S. Sidney Smith, for appellant.
Edward W. Sheldon, for respondents.

BARRETT, J. Three objections are made to the title to the 11-foot strip, which will be considered in order.

1. It is said that the judgment recovered by Blanco divested Dalley's title. The judgment decreed that the deed of December 1, 1855, was made "with intent to defraud, hinder, and delay the plaintiff and other creditors," and that it was "fraudulent and void as against said plaintiff and said creditors." It was also directed that the register "enter of record the judgment order in his register of deeds, and note the same in the margin of the record of each of said deeds so vacated and annulled as aforesaid." The judgment is quite explicit that the deed covering the strip in question is annulled only as to Blanco and other creditors, and the direction to the register is merely to record such qualified annulment. The judgment is the ordinary judgment creditor's decree. There can be no doubt that it leaves the deed operative inter partes. Bank v. Eames, 4 Abb. Dec. 83; Waterbury v. Westervelt, 9 N. Y. 598. After the recovery of this judgment, Blanco might have levied upon and sold this property. He did issue execution against and sell a great deal of other property conveyed by Harris, but not that in question here. Since the remedies of Blanco and all other creditors of Harris have long since ceased, from lapse of time, the land is free from interference by them, and Dalley's title is sound.

2. The mortgages executed by Dalley to Harris are said to be a valid ground of objection to the title. But more than 34 years had elapsed at the time this action was begun since the mortgages fell due. They cannot, consequently, be enforced (Code Civ. Proc. § 381), unless within 20 years there has been a payment of either principal or interest. The defendant has given no proof of such a payment. On the contrary, the plaintiffs gave evidence tending to show affirmatively that no such payment had been made. Under these circumstances, the mortgages do not constitute a valid objection to the title. Belmont v. O'Brien, 12 N. Y. 394; Katz v. Kaiser, 10 App. Div. 137, 41 N. Y. Supp. 776.

3. It is said that the proceedings as to the opening of Eleventh avenue constitute an adjudication that the deed from Harris to Dalley is void. The following state of affairs existed at the time the question of the right to these awards was referred for decision: Harris died in 1868, leaving all of his property to his wife, Sarah Harris. On June 1, 1860, Harris assigned to Wilson the two mortgages given by Dalley. Wilson the next day assigned them to Mason. Mason in 1876 assigned them to Sarah Harris. Sarah Harris assigned to Buckley all her interest in the awards made in these proceedings, including her right to the sum due for the strip in Knapp's lane west of the property in suit. The referee, in his report, awarded the latter sum to Buckley, as such assignee, and his decision was affirmed by the courts. The ground of the decision is not stated in the referee's report, but it is given in his opinion. He first states that Mrs. Harris' claim was based on her ownership of the mortgages, and that Dalley's contention that those mortgages had been released by an instrument executed by Harris in May, 1857, was not well founded. He then states that "there is another view of Dalley's claim." In substance, it is that, in view of the particular circumstances showing a failure of title to most of the land conveyed by Harris, the mort-

gages given to him by Dalley failed for lack of consideration; that the deeds failed likewise, and the whole transaction was at an end; and that, consequently, in equity, title to this strip revested in Harris, and by his will passed to Mrs. Harris. The referee states:

"Dalley must either abandon his claim under the deeds, or hold the deeds subject to the mortgages. Either way, he would not be entitled to these moneys, and Mrs. Harris would be."

This is the gist of the decision. The two grounds thus given for assailing Dalley's right to the award are clearly inconsistent. One is predicated upon the validity of both deed and mortgages; the other, upon their invalidity. Where inconsistent reasons are advanced for a decision, it is not res adjudicata as to the facts involved in the support of either reason. People v. Hall, 104 N. Y. 170, 10 N. E. 135. Thus, there is no binding adjudication as to whether or not the deed from Harris to Dalley was void in toto. The only question actually decided is that Buckley, as Mrs. Harris' assignee, was entitled to the award. But, if it should be assumed that an adjudication on the point exists, it was in no way binding upon Hollins when he purchased, in 1889, and cannot affect the plaintiffs. Hollins had no notice of the Eleventh avenue proceedings, for they were not of record. Assuming that Harris might have brought an action in equity to compel Dalley to release to him the legal title upon tender of the bonds and mortgages (though it is difficult to see how such an action could have been maintained, in view of the fact that Harris had assigned the mortgages), this cannot affect the plaintiffs. Till such an action was begun, and the lis pendens filed, Hollins was in no way bound by this latent equity. Such latent equity could not prejudice a bona fide purchaser for value and without notice, as Hollins was. Hollins took subject to the rights of Harris' creditors, and to no other right whatever. The rights of these creditors having long since passed away, he bought a good, legal title to the property, and the plaintiffs have succeeded to it.

It is contended that the payment of the award was a payment upon the mortgages, which were thus kept alive. There, again, it is impossible to determine whether the money was awarded to Buckley in right of the mortgages or of the deed. But, assuming the former, this could not extend the time to bring suit upon the mortgages. To have this effect, a payment must be made by the party liable, or by his authorized agent. Murdock v. Waterman, 145 N. Y. 55, 39 N. E. 829. In this case the city of New York made the payment. Dalley did not make it, nor was the city his agent. If he had consciously assented to the payment to Buckley as a payment upon the mortgages, it might successfully be contended that this made the city his agent, within the meaning of the rule. But he did nothing of the sort. On the contrary, he claimed that the money should be paid to himself, and that the mortgages were not in existence. In every aspect of the case, we think that the title tendered was good beyond dispute, and should have been accepted.

The judgment should be affirmed, with costs. All concur.